IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Western Division
File No. 5: 98-CV-673-BO(2)

| | |
|---|---|
| KIM YOUNG-DIXON, | ) MEMORANDUM IN |
| | ) SUPPORT OF |
| Plaintiff, | ) DEFENDANT'S MOTION |
| | ) TO STAY PROCEEDINGS |
| v. | ) AND COMPEL |
| CARMAX AUTO SUPERSTORES, INC. | ) ARBITRATION, |
| | ) OR TO DISMISS |
| Defendant. | ) |
| | ) 9 U.S.C. §§ 3 and 4 |

## I. INTRODUCTION

Defendant, Carmax Auto Superstores, Inc., ("Carmax"), respectfully moves this Court to stay these proceedings until completion of contractually required arbitration, and to compel arbitration as provided for by contract, or to dismiss this Complaint, pursuant to Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4.

## II. FACTS

Plaintiff is a resident of North Carolina and a former employee of defendant Carmax. Complaint, at ¶¶ 2 and 3. Carmax, a national retailer of automobiles, has its principal place of business in the County of Henrico, Virginia.

Plaintiff began her employment with Carmax in October 1994. Id., at ¶ 3. Plaintiff's employment with Carmax terminated in July of 1997. Id. at ¶ 8. Plaintiff filed this lawsuit on August 28, 1998, alleging that she was terminated due to race discrimination. Carmax is the only named defendant in the lawsuit.

### A. Plaintiff Is Party To An Agreement To Arbitrate This Dispute

Circuit City Stores, Inc. ("Circuit City") is a national retailer of brand name consumer electronics and major appliances. Carmax is a wholly owned subsidiary of Circuit City. In March 1995, Circuit city implemented an alternative dispute resolution program known as the Associate Issue Resolution Program ("AIRP") applicable to all Circuit City and Carmax employees. A copy of the Associate Issue Resolution Package distributed to employees beginning in March 1995 is attached to the Declaration of Pamela G. Parsons ("Parsons' Declaration"), which accompanies this memorandum, as Exhibits B-F. It contains: (a) the Associate Issue Resolution Handbook, which sets forth Circuit City's reasons for developing the AIRP, details the four steps of review available to employees through the voluntary Open Door Policy, and describes the program of final and binding arbitration of legal disputes (attached to Parsons' Declaration as Exhibit C); (b) an Arbitration Request Form for any associate wishing to initiate the arbitration process (attached to Parsons' Declaration as Exhibit D); (c) the Dispute Resolution Rules and Procedures, governing all arbitration held pursuant to the AIRP (attached to Parsons' Declaration as Exhibit E); (d) an Associate Receipt of Issue Resolution Package, for the employee to acknowledge that she received the packet, has seen the video, and understands that, unless she opts out of the program, she will be required to arbitrate all employment-related legal disputes (attached to Parsons' Declaration as Exhibit B); and (e) the Arbitration Opt-Out Form, pursuant to which any individual employed by Circuit City or Carmax at the time the AIRP was implemented was free to opt out of the arbitration program by submitting the form within 30 days of her informational session and receipt of the AIRP package (attached to Parsons' Declaration as Exhibit F). Those employees who did not opt out were bound by the provisions of the AIRP. See Parsons' Declaration at 2.

On April 13, 1995, Carmax introduced the Associate Issue Resolution Program ("AIRP") at the location in which plaintiff worked, through an informational video presentation and comprehensive written materials. On that date, plaintiff signed an "Associate Receipt of Issue Resolution Package," a copy of which is attached to Parsons' Declaration as Exhibit A. By signing the Associate Receipt of Issue Resolution Package, and not thereafter opting out of the arbitration program, plaintiff agreed to arbitrate any employment-related legal dispute that might arise from her employment with or termination from Carmax. See Parsons' Declaration, ¶¶ 3-7.

Pursuant to the AIRP, applicants, employees, and former employees of both Carmax and Circuit City ("Associates") are provided various means by which they may resolve employment disputes. Parsons' Declaration, ¶ 4. The AIRP includes final and binding arbitration of all employment-related legal claims. For Associates hired prior to the implementation of the AIRP, participation was voluntary. Id., ¶ 5. Associates who chose not to participate were provided a specific mechanism through with they could opt out of the program. Those Associates were required to mail to Circuit City the "Arbitration Opt-Out Form" within 30 days of receipt of the AIRP. Id., ¶ 5.

In order to confirm receipt of an Associate's "Opt-Out Form" (and remove the Associate from the AIRP), Circuit City, upon receipt of the form, date stamped the original form, and then returned a copy of the date-stamped form to the Associate, while retaining the original in its files at the corporate headquarters. This practice was followed with all Circuit City and Carmax Associates who submitted timely requests to opt out of the AIRP. Id., ¶ 6.

Plaintiff did not submit an "Opt-Out Form" to Circuit City or Carmax within 30 days of her receipt of the AIRP. Id., ¶ 7. An exhaustive search was conducted of the AIRP files at Circuit City and Carmax and there is no record of plaintiff ever having submitted an "Opt-Out

Form," nor is there any record of Circuit City or Carmax having sent to plaintiff confirmation of receipt of any "Opt-Out Form." Id., ¶ 7. Circuit City and Carmax consistently have taken the position that any Associate who did not submit an "Opt-Out Form" in a timely manner is covered by the AIRP and must resolve any employment-related disputes through arbitration. Id., ¶ 8.

Significantly, after declining to opt-out of arbitration, plaintiff initiated proceedings to arbitrate this claim. On October 9, 1997, plaintiff filed an Arbitration Request Form with the required filing fee of $75.00. See Declaration of Cyril F. Coombs ("Coombs Declaration"), which accompanies this memorandum, and Exhibit 1 attached thereto. In the letter attached to her Arbitration Request Form and co-signed by plaintiff's counsel, plaintiff specifically stated "[p]lease be advised, pursuant to the Dispute Resolution Rules and Procedures of Circuit City Stores, Inc. we hereby request arbitration of the following matter." Id. One month after requesting arbitration, plaintiff wrote to the Equal Employment Opportunity Commission ("EEOC") to file a discrimination complaint. See Coombs Declaration, Exhibit 2. In that letter, plaintiff specifically acknowledged:

> Due to a dispute resolution agreement that I signed after working with Carmax for approximately one year, I have to allow Carmax to settle this dispute through arbitration. I am currently processing this dispute.

Id.

In fact, after specifically requesting arbitration on October 9, 1997 and then advising the EEOC of her submission to arbitration on November 4, 1997, plaintiff, by counsel, participated in the process of selecting an arbitrator over the course of the next several months. In his December 4, 1997 letter to Resolute Systems, Inc. ("Resolute Systems"), the arbitration service agreed to by the parties, plaintiff's counsel specifically advised that "pursuant to the Dispute Resolution Rules and Procedures of Carmax" he found certain arbitrators unacceptable and

expected to receive another panel of arbitrators. Plaintiff's counsel later found one individual on a panel of proposed arbitrators to be acceptable. See Coombs Declaration and Exhibit 3 attached thereto. Plaintiff's counsel then spent the next several months reviewing and ultimately rejecting several lists of proposed arbitrators submitted for consideration by Resolute Systems. Id. and Exhibits 5 attached thereto. However, no arbitrator had been deemed acceptable by both parties prior to the time the plaintiff filed this action.

### B. The AIRP Covers The Issues Raised In This Lawsuit

The Dispute Resolution Rules and Procedures provided to Plaintiff clearly identify those claims which are subject to arbitration:

> All previously unasserted Associate claims arising under federal, state or local statutory or common law shall be subject to arbitration. Merely by way of example, these claims include, but are not limited to, claims arising under the Age Discrimination in Employment Act (ADEA), **Title VII of the Civil Rights Act of 1964**, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act (ADA), the Fair Labor Standards Act (FLSA), 42 U.S.C. §1981, as amended, including the amendments of the Civil Rights Act of 1991, the Employee Polygraph Protection Act, the employee Retirement Income Security Act (ERISA), the National Labor Relations Act, state discrimination statutes, state statutes and/or common law regulating employment termination, the law of contract or the law or tort, including but not limited to, claims for malicious prosecution, wrongful discharge, wrongful arrest/wrongful imprisonment, intentional/negligent infliction of emotional distress or defamation.

Rule 2, Dispute Resolution Rules and Procedures, contained within Associate Issue Resolution Package, attached to Parsons' Declaration as Exhibit E (emphasis added).

## III. ARGUMENT

### A. The Federal Arbitration Act Mandates Enforcement Of Arbitration Agreements Between Employers And Employees

The purpose of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") was to reverse the long-standing judicial hostility to arbitration agreements and to place them upon the same footing as other contracts. Section 2 of the FAA establishes the validity of any written provision for arbitration in any contract evidencing a transaction involving commerce:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (1970).

Section 3 of the FAA provides for a stay of proceedings where an issue therein is referable to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (1970).

Furthermore, the FAA provides for an order compelling arbitration when one party has failed or refused to comply with the arbitration agreement ("[T]he court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement"), 9

U.S.C. § 4. "These provisions manifest a 'liberal federal policy favoring arbitration agreements.'" Gilmer v. Interstate/Johnson Lane Corp, 500 U.S. 20, 25 (quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). Where, as here, a suit is filed based upon an issue covered by a written agreement to arbitrate, a court must stay the suit pending arbitration and compel the party failing to arbitrate under a written agreement to proceed with her claim pursuant to the arbitration agreement to which she is a party.

The FAA requires a court to enforce arbitration agreements in the same manner as it enforces all contracts. Volt Info. Sciences, Inc. v. Bd. of Trustees, 489 U.S. 468, 474 (1989). Pursuant to § 3 of the FAA, a court should stay proceedings pending arbitration. 9 U.S.C. § 3. In the alternative, a court may dismiss a lawsuit when it determines that the issues involved in that lawsuit are subject to arbitration. See Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992).

### B. There Is Powerful Legislative, Governmental And Public Endorsement For The Resolution Of Employment Disputes Through Alternative Dispute Resolution Mechanisms

Congress, the courts, federal agencies, and private organizations alike have recognized the advantages of using alternative dispute resolution ("ADR") to resolve employment controversies. It is widely known that the federal court system is overwhelmed by the number of employment-related lawsuits on the docket.[1] As a result, the administrative process and judicial proceedings for resolution of employment claims have become inefficient, time-consuming and costly.[2] Numerous employers in the public and private sectors have recognized these problems

---

[1] Stuart H. Bompey, Michael Delikat and Lisa K. McClelland, The Attack on Arbitration and Mediation of Employment Disputes, 13 The Labor Lawyer 21 (1997) (the number of employment-related civil rights suits shot up 128% from 1991 to 1996).

[2] Thomas J. Piskorski and David B. Ross, Private Arbitration as the Exclusive Means of Resolving Employment-Related Disputes, Employee Relations L.J./Vol. 19, No. 2, Autumn 1993 (the growing number and cost of

and, in recent years, have sought some means of alternative dispute resolution to lessen the burdens associated with the legal redress system.[3] Congress and the EEOC both specifically have endorsed the use of ADR, and many federal agencies (including the EEOC) have taken ADR initiatives. Congress and the federal government recognize the advantage of using ADR to resolve workplace disputes.

Moreover, the two most recently enacted federal nondiscrimination statutes specifically encourage the use of ADR to resolve employment disputes. The Americans with Disabilities Act ("ADA"), for example, sanctions the use of ADR "where appropriate and to the extent authorized by law." 42 U.S.C. ((12101-12213 (1994). Similarly, the Civil Rights Act of 1991, which amended the ADA and Title VII of the Civil Rights Act of 1964, provides:

> Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation mediation, fact finding, mini trials and arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title.

Pub. L. No. 103-283, § 118 (amending Pub. L. No. 102-166). The Federal Arbitration Act, 9 U.S.C. § 1 et seq., likewise recognizes the validity of ADR (arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract"). 9 U.S.C. § 2.

Circuit City and Carmax developed the AIRP in reliance upon the strong and clear legislative and judicial public policy in favor of arbitration, as described by the United States Supreme Court in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (reaffirming the "liberal federal policy favoring arbitration agreements"). Both Circuit City and Carmax have

---

employment-related lawsuits have caused many employers to examine alternative, less costly methods for resolving employment disputes).
3 Id.

maintained the AIRP in reliance upon the body of precedent recognizing the federal policy favoring the effective and efficient resolution of disputes through arbitration, including Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875, 881 (4th Cir.), cert. denied, 117 S. Ct. 432 (1996) (holding that Title VII claims, like ADEA claims, are subject to mandatory arbitration and noting that "the language of [Title VII] could not be any more clear in showing Congressional favor towards arbitration [of Title VII discrimination claims]"), and O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273 (4th Cir. 1997) ("The [Federal Arbitration Act] embodies a strong federal policy in favor of arbitration, and, accordingly, there is a strong presumption in favor of the validity of arbitration agreements").

### C. The United States Supreme Court, The Fourth Circuit And Most United States Courts Of Appeals Already Have Ruled That Employment Discrimination Claims May Be Subject To Mandatory Arbitration

In Gilmer, the United States Supreme Court addressed the arbitrability of federal statutory employment claims. In that case, the Supreme Court unequivocally ratified existing judicial support for arbitration of employment discrimination matters and upheld an agreement to arbitrate employment disputes. Gilmer, 500 U.S. at 27-33.

Specifically, in Gilmer the Supreme Court held that it was permissible for individuals to arbitrate claims arising under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Id. at 22. The Supreme Court found that the benefits of arbitration offset any limitations:

> [B]y agreeing to arbitrate a statutory claim, a party does not forego
> the substantive rights afforded by the statute; it only submits to
> their resolution in an arbitral, rather than judicial forum. . . .
> although [discovery procedures in arbitration] might not be as
> extensive as those in the federal courts, by agreeing to arbitration,
> a party 'trades the procedures and opportunity for review of the

> courtroom for the simplicity, informality and expedition of arbitration.'

Id. at 26-31 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)).

Subsequent to the Gilmer decision, the Fourth Circuit and a majority of the United States Courts of Appeals have followed the Supreme Court's holding, acknowledging the strong federal policy in favor of arbitration of employment claims and the corresponding presumption in favor of the validity of agreements requiring arbitration of employment claims. In Johnson v. Circuit City Stores, Inc., 148 F. 3d 373 (4th Cir. 1998), for example, the Fourth Circuit recently held that Circuit City's Dispute Resolution Agreement is supported by sufficient consideration to uphold its enforceability. Consistent with the compelling language in O'Neil, and Austin, the Johnson Court reiterated:

> [T]he Supreme Court has emphasized that 'it should be kept in mind that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.' Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). "Pursuant to that liberal policy, 'any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability.'" O'Neil, 115 F. 3d at 273-74 (quoting Moses H. Cone, 460 U.S. at 24, 25).

Johnson v. Circuit City Stores, 148 F. 3d at 377.

Similarly, in Zandford v. Prudential-Bache Sec., 112 F. 3d 723, 726 (4th Cir. 1997), the Fourth Circuit held that "federal policy strongly favors arbitration under which 'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability.'" As such, parties' intentions to be

bound by arbitration should be "generously construed." Clark v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 924 F.2d 550, 554 (4th Cir.), cert. denied, 502 U.S. 818 (1991).

The Fourth Circuit's decision in O'Neil further affirms the validity of agreements to arbitrate employment-related disputes. In O'Neil, the plaintiff sued her former employer alleging that she had been discharged in violation of the Family and Medical Leave Act. Id. at 273. Citing an arbitration agreement signed by the plaintiff agreeing to submit all employment-related disputes to arbitration, the employer moved that the suit be stayed pending arbitration. Id. The District Court denied the motion, but the Fourth Circuit reversed, stating:

> The [Federal Arbitration Act] embodies a strong federal policy in favor of arbitration, and, accordingly, there is a strong presumption in favor of the validity of arbitration agreements . . . In the FAA, Congress endorsed arbitration as a less formal and more efficient means of resolving disputes. In line with congressional intent, the Supreme Court has repeatedly emphasized that the FAA represents a liberal federal policy favoring arbitration agreements.

Id. See also, Austin v. Owens-Brockway (requiring an employee to arbitrate her discrimination claims pursuant to the language of a collective bargaining agreement); Wright v. Universal Maritime Service Corporation, 1997 U.S. App. LEXIS 19299 (4th Cir. July 29, 1997) (unpublished opinion), cert. granted, 118 S.Ct. 1162 (March 2, 1998)(recognizing that ADA claims are subject to a collective bargaining agreement's mandatory arbitration clause, because to hold otherwise "would fly directly in the face of both the ADA's statutory preference for arbitration and the strong federal policy favoring alternative dispute resolution"); and Turner v. Bell Atlantic-Virginia, 1997 U.S. Dist. LEXIS 11192 (W.D. Va. May 5, 1997) ("an employee who is covered by a collective bargaining agreement that requires arbitration of employment discrimination claims must pursue such a claim in arbitration").

In Brown v. Trans World Airlines, 127 F.3d 337 (4th Cir. 1997), an employee covered by a collective bargaining agreement forbidding discrimination sued her employer for violations of Title VII and the FMLA. The collective bargaining agreement provided for arbitration of disputes concerning its interpretation and application. However, unlike Carmax's AIRP or the arbitration agreement in Austin, the collective bargaining agreement at issue in Brown did not purport to submit any non-contract-based statutory dispute to arbitration. In light of the limited arbitration clause, the Fourth Circuit declined to require that Ms. Brown submit her Title VII and FMLA claims to arbitration, but reaffirmed its previous holding that specific agreements to arbitrate statutory and common law claims arising out of the employment relationship are enforceable:

> Even if statutory claims exist independently of a collective bargaining agreement, however, those claims may be made the subject of an enforceable arbitration agreement... In Austin we held that an agreement to submit to arbitration an employee's claims for discrimination under Title VII and the [ADA] is enforceable and that nothing in either Title VII or the [ADA] indicated a congressional purpose to preclude arbitration under those acts... Nothing in our holding precludes the parties from agreeing to arbitrate all disputes arising out of the employment relationship by which they would be agreeing to arbitrate not only contract-based disputes, but also disputes based on statutory and common law.

Id. at 336-37.

Other United States Courts of Appeals also have enforced agreements to arbitrate employment disputes similar to the one at issue in the present case. See, e.g., Cole v. Burns Int'l Sec. Servs, 105 F.3d 1465 (D.C. Cir. 1997) (upholding agreement requiring former employee to submit Title VII race and retaliation claims to arbitration); Williams v. Cigna Fin. Advisors, 56 F.3d 656 (5th Cir. 1995) (holding that the Older Workers Benefit Protection Act does not bar mandatory arbitration of employment disputes); Matthews v. Rollins Hudig Hall Co., 72 F.3d 50

(7th Cir. 1995) (ADEA); Pritzker v. Herrill Lynch, Pierce, Fenner & Smith, 7 F.3d 1110 (3d Cir. 1993) (ERISA); Bender v. AG Edwards & Sons, Inc., 971 F.2d 698 (11th Cir.1992) (Title VII); Willis v. Dean Witter Reynolds, Inc., 948 F.2d 305 (6th Cir. 1991) (Title VII).

### D. Circuit City's Arbitration Program Repeatedly Has Been Upheld By Numerous Federal And State Courts

Nine federal district courts and one state appellate court have considered and enforced the Circuit City AIRP now before this Court. In orders dismissing and/or staying litigation filed against Circuit City by persons subject to the AIRP, copies of which are set forth in the Appendix to this memorandum, courts enforced the arbitration agreement as follows:

1. Britos v. Circuit City Stores, Inc., Case No. 97-2905-CIV-HIGHSMITH (S.D. Fla. Nov. 20, 1997) (enforcing agreement to arbitrate following plaintiff's failure to file memorandum showing good cause why arbitration of statutory claims should not be compelled).

2. Circuit City Stores, Inc. v. Adams, Case No. C98-0365 CAL, 1998 U.S. Dist. LEXIS 6215 (N.D. Cal. April 29, 1998) (appeal pending) (enforcing AIRP and compelling arbitration).

3. Circuit City Stores, Inc. v. Ahmed, Case No. CV-98-01377-LEW (C.D. Cal. April 7, 1998), appeal docketed, No. 98-55896 (9th Cir. May 2, 1998) (staying state court action and compelling arbitration).

4. Circuit City Stores, Inc. v. Curry, 946 S.W. 2d 486 (Tex. Ct. App. 1997) (granting Circuit City's interlocutory appeal compelling arbitration and staying civil litigation of statutory claims).

5. Circuit City Stores, Inc. v. Gonzales, Case No. CIV-S-97-0913 EJG GGH (E.D. Cal. October 27, 1997) (granting Circuit City's petition to stay litigation and to compel arbitration of state statutory and related claims).

6.  <u>Ding v. Circuit City Stores, Inc.</u>, Case No. 95-1226D (W.D. Wash. Oct. 24, 1995) (plaintiff's concede that Title VII claims are subject to arbitration).

7.  <u>Leos v. Circuit City Stores, Inc.</u>, Case NO. SA-96-CA-48 (W.D. Texas June 26, 1996) (motion to dismiss treated as summary judgment; Title VII claim compelled into arbitration).

8.  <u>Majdi v. Circuit City Stores, Inc.</u>, Case No. CV 98-4112 AAH (C.D. Cal. July 29, 1998) (appeal pending) (enforcing AIRP and compelling arbitration).

9.  <u>Shelton v. Circuit City Stores, Inc.</u>, Case No. 96-8669-CIV-RYSKAMP (S.D. Fla. April 21, 1997) (affirming Magistrate Judge's Order staying litigation of Title VII and state statutory claims pending arbitration).

10. <u>Ward v. Circuit City Stores, Inc.</u>, Case No. CIV-S-97-0227 DFL PAN (E.D. Cal. April 29 and August 4, 1997) (orders compelling arbitration of state statutory and related claims pursuant to Section 4 of FAA).

In <u>Ward v. Circuit City Stores, Inc.</u>, Memorandum Opinion No. 97-0227 DFL PAN (E.D. Cal. Mar. 29, 1997), for example, a United States District Court in California recently considered the impact of the FAA on Circuit City's AIRP. See <u>Ward v. Circuit City Stores, Inc.</u>, Memo. Op., attached hereto at Appendix. In that case, Mr. Ward, a former Circuit City employee, alleged that the Company had terminated him because of his race and in retaliation for his complaints of discrimination. Circuit City moved to dismiss the suit pursuant to the AIRP on grounds that Mr. Ward was required to submit all employment-related legal disputes to arbitration. The court in <u>Ward</u> agreed with Circuit City, holding that the AIRP's agreement to arbitrate was "valid, irrevocable and enforceable":

> The [FAA] makes contracts to settle controversies by arbitration "valid, irrevocable and enforceable" and requires courts to place

> such provision on the same footing as other contracts. 9 U.S.C. §
> 2; <u>Volt Information Sciences, Inc. v. Board of Trustees of Leland
> Stanford Junior Univ.</u>, 109 S. Ct. 1248, 1253 (1989). Individuals
> may contractually agree to arbitrate statutory claims, and such
> agreements may be enforceable pursuant to the [FAA]. <u>See
> Gilmer v. Interstate Johnson/Lane Corp.</u>, 11 S. Ct. 1647, 1652
> (1991) (noting that "'[b]y agreeing to arbitrate a statutory claim, a
> party does not forgo the substantive rights afforded by the statute;
> it only submits to their resolution in an arbitral, rather than a
> judicial, forum'") (<u>quoting</u> <u>Mitsubishi Motors Corp. v. Soler
> Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 628 (1985)).

<u>Ward v. Circuit City Stores, Inc.</u>, Mem. Op. at 3-4, attached hereto at Appendix.[4]

### E. Plaintiff Specifically Requested Arbitration Pursuant To The Carmax Arbitration Request Form And Is Bound By The Agreement To Arbitrate The Claims Brought In This Case

Based on the undisputed facts, this Court should stay these proceedings and compel the parties to arbitrate the dispute presented in this case in accordance with the agreement into which they have entered. In light of plaintiff's decision not to opt out of the program, she agreed to participate in the AIRP and proceed to arbitration with any employment-related claims, rather than pursue a lawsuit over those claims. <u>See</u> Parsons' Declaration and Exhibit A attached thereto. Plaintiff was informed in writing that she would be bound to arbitrate such claims unless she followed the appropriate procedures required to "opt-out" of the arbitration program. Specifically, plaintiff was instructed in writing that she must complete the "Opt-Out Form" provided to her, and submit the form, via U.S. Mail, to Circuit City within 30 days of her receipt of the Associate Issue Resolution Package. <u>Id.</u> at Exhibits A, C, and F. As plaintiff did not opt-out of the AIRP, she is therefore obligated to arbitrate the employment-related disputes raised in this lawsuit.

---

[4] As previously noted, the Fourth Circuit recently ruled that Circuit City's Dispute Resolution Agreement possessed sufficient consideration to be enforceable and remanded the case to the district court for reconsideration of Circuit City's motion for summary judgment in <u>Johnson v. Circuit City Stores, Inc.</u>, 148 F. 3d 373 (1998).

This Court should compel arbitration not only because plaintiff failed to opt-out of the AIRP, but moreover, because she specifically requested arbitration. See Parsons' Declaration and Exhibit D attached thereto; Coombs Declaration and Exhibits 1, 2, 3, 4, and 5 attached thereto. The Arbitration Request Form expressly reaffirms plaintiff's agreement to arbitrate: "I hereby submit the above-described dispute for arbitration. I agree to accept the decision and award of the Arbitrator as final and binding. . . ." Coombs Declaration, Exhibit 1. In addition to submitting her Arbitration Request Form with the required filing fee of $75.00 on October 9, 1997, plaintiff (and plaintiff's counsel) specifically stated:

> Please be advised, pursuant to the Dispute Resolution Rules and Procedures of Circuit City Stores, Inc. we hereby request arbitration of the following matter.

See Coombs Declaration and Exhibit 1 attached thereto. One month later, plaintiff wrote to the EEOC to file a discrimination complaint and specifically represented to that Commission that:

> Due to a dispute resolution agreement that I signed after working with Carmax for approximately one year, I have to allow Carmax to settle this dispute through arbitration. I am currently processing this dispute.

See Coombs Declaration at Exhibit 2. Over the next several months, plaintiff, by counsel, represented her adherence to the Dispute Resolution Rules and Procedures of Carmax and engaged in a lengthy process of reviewing and ultimately rejecting various panels of proposed arbitrators. Coombs Declaration and Exhibits attached thereto. Plaintiff's counsel also served (incomplete) written discovery upon Carmax's counsel on December 29, 1997. Coombs Declaration, ¶ 4, Exhibit 4.

Despite having repeatedly represented to Carmax, Carmax's counsel, and the arbitration service, and even the EEOC her intent to arbitrate this claim, plaintiff now attempts to recant her agreement to arbitrate and undo the proceedings of the past eleven months.

## IV. CONCLUSION

For the foregoing reasons, Carmax, by counsel, respectfully requests that this Court enter an Order staying this litigation until arbitration has been concluded in accordance with the terms of the agreement, compelling plaintiff to proceed to arbitration in accordance with the terms of the agreement or, alternatively, dismissing this action. In addition, in light of the repeated acknowledgments of plaintiff and her counsel that they were bound by an arbitration agreement, Carmax respectfully requests that this Court award it all costs and expenses, including attorneys fees, associated with this motion to stay proceedings and compel arbitration.

This the 15th day of October, 1998.

_____
DAVID E. NAGLE (Va. Bar No. 20571)
CHARLES G. MEYER, III (Va. Bar No. 34146)
Attorneys for Defendant
LeCLAIR RYAN
707 East Main Street, 11th Floor
Richmond, Virginia 23219
Telephone: (804) 343-4077

_____
G. LAWRENCE REEVES, JR. (N.C. Bar No. 8482)
Attorneys for Defendant
PATTERSON, DILTHEY, CLAY & BRYSON, L.L.P.
4020 WestChase Boulevard, Suite 550
Raleigh, North Carolina 27607
Telephone: (919) 821-4020
LR 2.04 Counsel

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum in Support of the Motion to Stay Proceedings and Compel Arbitration, or to Dismiss were served by Untied States mail, postage-prepaid, addressed to counsel for Plaintiff, as follows:

>CRAIG JAMES, ESQ.
>ANDERSON & JAMES
>304 Wilson's Mill Road
>Post Office Box 1192
>Smithfield, North Carolina  27577

This the 15th day of October, 1998.

G. LAWRENCE REEVES, JR.  (N.C. Bar No. 8482)
Attorneys for Defendant
PATTERSON, DILTHEY, CLAY & BRYSON, L.L.P.
4020 WestChase Boulevard, Suite 550
Raleigh, North Carolina  27607
Telephone: (919) 821-4020
LR 2.04 Counsel